**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

| | | |
|---|---|---|
| **ISABELITA DEMESA,**<br>**Administratrix of Estate**<br>**and Personal Representative**<br>**of JOSE DEMESA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CAROLYN W. COLVIN,**<br>**Acting Commissioner of Social Security,**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Civil Action No. 1:11-0881** |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits (DIB) under Titles II of the Social Security Act, 42 U.S.C. §§ 401 - 433. By Standing Order, this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Brief in Support of Plaintiff's Complaint and Defendant's Brief in Support of Defendant's Decision (Document Nos. 14 and 16.).

Plaintiff Isabelita Demesa, a medical doctor (hereinafter referred to as "Claimant"), acting in behalf of her husband, Jose Garcia Demesa, filed an Application for DIB on April 30, 2004, alleging disability as of December 31, 1991. (Tr. at 100 - 102.)[1] The claim was denied initially and upon reconsideration. (Tr. at 66 - 69, 72 - 74.) On September 20, 2004, Claimant requested a

---

[1] The record indicates that Mr. Demesa had a heart attack in March, 2004 was in a coma thereafter and died on October 19, 2005. (Tr. at 16, 112, 151, 379, 439 - 440.).

hearing before an Administrative Law Judge (ALJ). (Tr. at 76.) A hearing was held on November 15, 2005, before the Honorable Gordon Malick. (Tr. at 33 - 57.) A further hearing was held before ALJ Malick on January 10, 2007. (Tr. at 336 - 344.) By Decision dated March 27, 2007, ALJ Malick determined that Claimant was not entitled to benefits.[2] (Tr. at 14 - 20.) The ALJ's Decision became the final decision of the Commissioner on October 11, 2007, when the Appeals Council denied Claimant's request for review. (Tr. at 6 - 8.) On December 7, 2007, Claimant filed a Complaint in this Court seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). Isabelita Demesa, Administratrix of Estate and Personal Representative of Jose Demesa v. Michael J. Astrue, Civil Action No. 1:07-0796. On July 7, 2008, Claimant filed a Brief in Support of Motion for Judgment on the Pleadings. (Id., Document No. 16.) On August 8, 2008, the Commissioner filed a Motion to Remand to "further develop the record and further consider the vocational evidence and

---

[2] Judge Malick stated as follows in concluding that Claimant was not disabled Tr. at 14 - 20.):

1. The claimant last met the insured status requirements of the Social Security Act on December 313, 1991; and he died on October 19, 2005.
2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of December 31, 1991, through the date last insured of December 31, 1991 (20 CFR §§ 404.1520(b) and 404.1571).
3. Through the date last insured on December 31, 1991, the claimant had the following severe combination of impairments: traumatic and degenerative joint disease, sleep apnea, hypertensive coronary disease, diabetes mellitus, depression, anxiety, and pain disorder (20 CFR § 404.1520(c)).
4. Through the date last insured on December 31, 1991, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
5. After careful consideration of the entire record, the undersigned finds that, through the date last insured on December 31, 1991, the claimant had the residual functional capacity to perform a wide range of light and sedentary exertional activity, subject to postural limitations.

claimant's widow's testimony." (Id., Document No. 20.) The undersigned filed a Proposed Findings and Recommendation on September 18, 2008, that the matter be remanded as requested. (Id., Document No. 21.) The District Court accepted the undersigned's recommendation and remanded this matter to the Commissioner for further administrative consideration on October 24, 2008. (Id., Document Nos. 22 and 23 and Tr. at 382 - 388.) The Appeals Council remanded the claim to an Administrative Law Judge with directions as follows (Tr. at 391 - 392.):

(1) Give consideration to the medical source opinions of Dr. Neri, Dr. Merva, Dr. Garcia and Dr. Rago (Tr. at 329 - 333.) and explain the weight given to such opinion evidence.

(2) Further evaluate the Claimant's subjective complaints prior to December 31, 1991, as well as third party testimony and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms.

(3) Give further consideration to the claimant's ability to perform his past relevant work prior to his date last insured pursuant to the provisions under Social Security Ruling 82-61.

A hearing was held on May 21, 2009, before the Honorable Richard Swartz. (Tr. 417 - 445.) By Decision dated March 27, 2007, ALJ Swartz determined that Claimant was not entitled to benefits. (Tr. at 372 - 380.) ALJ Swartz's Decision became the final decision of the Commissioner on October 11, 2007, when the Appeals Council denied Claimant's request for review. (Tr. at 345 - 347.) On November 10, 2011, Claimant filed a Complaint in this Court seeking further judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability benefits has the burden of proving a disability. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995)("The applicant bears the burden of production and proof during the first four steps of the inquiry."); Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a

continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2002). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2002). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, ALJ Swartz, applying the sequential analysis, stated as follows in concluding that Claimant's decedent was not disabled and therefore eligible for benefits (Tr. at 372 -

380.):

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 1991.
2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of December 31, 1991, through his date last insured of December 31, 1991 (20 CFR 404.1571 *et seq.*).
3. Through the date last insured, the claimant had the following severe impairments: hypertensive coronary disease, obesity and obstructive sleep apnea (20 CFR 404.1520©).
4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the requirements of any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he needed the opportunity to change positions and he had a mild limitation in his ability to concentrate.
6. Through the date last insured, the claimant was capable of performing past relevant work as a bookkeeper and office manager. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity. (20 CFR 404.1565).
7. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 31, 1991, the alleged onset date, through December 31, 1991, the date last insured (20 CFR 404.1520(f).

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving

conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

Claimant's Background

Mr. Demesa was born on October 12, 1943, and was 48 years old on December 31, 1991, the date when he was last insured. (Tr. at 100.) Mr. Demesa had "4 or more years of college." (Tr. at 141.) In the past, he worked as a comptroller for an egg company (1979 - 1984) and a bookkeeper and office manager of Claimant's medical practice (1990 - 1992). (Tr. at 143, 151.)

The Medical Record

The Court has reviewed all evidence of record, including the medical evidence, and will discuss it below as it relates to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision and the Commissioner's Response

Claimant asserts that the ALJ "failed to properly consider evidence from Ms. Demesa and from Dr. Florencio Neri, Dr. Regina Garcia, Dr. Andres Rago and Dr. Merva which showed that the claimant suffered from severe sleep apnea symptoms before the expiration of his insured status on December 31, 1991, and which according to the Social Security Administration's own vocational expert was totally disabling." (Document No. 14, pp. 3 - 4.) Claimant refers to her testimony that Mr. Demesa was the Office Manager for her medical practice from 1984 until 1991; Mr. Demesa gained weight after 1984 and developed heart problems and high blood pressure which caused him to experience vertigo and dizziness; Dr. Merva found that Mr. Demesa had sleep apnea and prescribed a CPAP (Continuous Positive Airway Pressure) machine; Mr. Demesa was experiencing

extreme fatigue in 1991, could not work on a regular basis, nearly fell asleep while driving, slept while at work and in social situations; and she obtained the reports of Dr. Florencio Neri, Dr. Regenio Garcia and Dr. Andres L. Rago, social friends and family practice doctors, to corroborate her report respecting Mr. Demesa's sleep apnea and its severity.[1] (Id., pp. 4 - 5.) Claimant states that "[a]ll of these reports confirmed that Mr. Demesa was very fatigued and was falling asleep during the day as a result of sleep apnea before December 31, 1991." (Id., p. 5.) Claimant further states that the vocational experts testified that a person who falls asleep recurrently is not capable of substantial gainful employment. (Id.) Next, Claimant contends that the ALJ did not set forth a "specific or rational basis to challenge the accuracy or credibility of Mrs. Demesa's testimony as well as the evidence of Dr. Florencio Neri, Dr. Regenio Garcia, Dr. Andres L. Rago and Dr. Merva." (Id., p. 6.) Claimant asserts that ALJ Swartz improperly discounted the testimony of Claimant and the statements of Drs. Neri, Garcia, Rago and Merva because medical records respecting Mr. Demesa's treatment for sleep apnea prior to December 31, 1991, were destroyed. Claimant states that the ALJ "did not address Dr. Neri, Dr. Demesa, Dr. Garcia and Dr. Rago's testimony on the merits despite the fact the case had been remanded precisely for that reason." (Id., p. 8.) Claimant asserts that Mr. Demesa had other serious medical problems prior to December 31, 1991, including atrial fibrillation, chronic high blood pressure, obesity, coronary artery disease and diabetes mellitus which are well known to be associated with sleep apnea and therefore it is logical to assume that Mr. Demesa had chronic obstructive sleep apnea prior to December 31, 1991. (Id., pp. 9 - 12.) Claimant then contends that the ALJ improperly focused upon when Mr. Demesa stopped using the CPAP machine to

[1] Claimant notes that "Dr. Neri and Dr. Rago did provide some medical treatment to Mr. Demesa as well." (Document No. 14, p. 5.)

discredit the evidence of his sleep apnea prior to December 31, 1991. Claimant states that it is evident from Claimant's testimony and Drs. Neri, Garcia and Rago's statements that Mr. Demesa "had severe fatigue associated with sleep apnea before December 31, 1991. The treatment for sleep apnea clearly was not working. Whether Mr. Demesa had the fatigue due to the fact that he was attempting to use the machine albeit ineffectively or that out of frustration he stopped using the machine entirely is not dispositive here." (Id., pp. 12 - 13.) Claimant further challenges the ALJ's determination that Mr. Demesa was "arguably . . . working after the date last insured" based upon a single indication in the record that he was doing late night carpentry at home when the ALJ initially determined that Mr. Demesa had ceased substantial gainful employment on or before December 31, 1991. (Id., p. 14.) Claimant also contends that the ALJ improperly focused upon Mr. Demesa's September 12, 1994, statement that he was "feeling good" (Tr. at 211.) when Mr. Demesa had elevated blood pressure and was recovering from his other severe medical problems associated with sleep apnea. (Id., p. 14.) Claimant asserts that the ALJ's determination that Dr. Rago's opinion is "speculative" and entitled to "no weight" is clearly erroneous and not supported by substantial evidence when his opinion is consistent with Claimant's testimony. Claimant contends therefore that "Dr. Rago's opinion should have been controlling weight since it was a treating source's medical opinion. " (Id., p. 16.) Finally, Claimant contends that the ALJ "did not properly evaluate the claimant's symptoms or properly assess the credibility of witnesses that supported the claimant's complaints of disability." (Id..)

The Commissioner states that "[t]he evidence merely establishes that Mr. Demesa had sleep apnea on the relevant date, but does not support a finding of disabling functional limitations." (Document No. 16, pp. 6 - 7.) The Commissioner contends therefore that "substantial evidence

supports the ALJ's determination that Mr. Demesa's sleep apnea was not disabling on December 31, 1991." (Id., p. 7.) The Commissioner states that though the record indicates that Mr. Demesa was diagnosed with sleep apnea and was using a CPAP machine prior to December 31, 1991, there is no evidence that his sleep apnea resulted in functional limitations which prevented him from performing substantial gainful work and therefore were disabling. (Id.) The Commissioner states that the statements of Drs. Garcia, Merva and Rago indicate "sketchy facts" that Mr. Demesa was tired and fatigued at times prior to December 31, 1991, but do not provide any specific evidence respecting functional limitations. (Id., pp. 8 - 9.) The Commissioner further asserts that medical records for several years after December 31, 1991, indicate that Mr. Demesa did not have functional limitations as a result of sleep apnea prior to or on that date. (Id., p. 9.) The Commissioner contends that the ALJ properly found Claimant's testimony respecting Mr. Demesa's limitations not credible because her testimony was not consistent with the medical evidence.

**Discussion.**

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2011). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).[2]

---

[2] To be a "medical opinion" entitled to "controlling weight", an opinion must come from a "treating source". "Treating source" is defined at 20 C.F.R. § 404.1502 as follows:

> Treating source means your own physician, psychologist or other acceptable medical

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2006). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the

source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have had an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s). We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source.

ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

The ALJ may consider evidence from other sources. 20 C.F.R. § 404.1513(d)(4) provides as follows:

> (d) Other sources. In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to
>
> * * *
>
> (4) Other non-medical sources (for example, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors and clergy).

See also 20 C.F.R. § 416.913(d)(4).

At levels four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity (RFC) for substantial gainful activity, i.e., what the claimant can still do. At level four, the ALJ considers the claimant's symptoms, including pain. A two-step process is used to determine whether a claimant's symptoms, including pain, are disabling. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the symptoms/pain alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2002); SSR 96-7p; see also Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the symptoms/pain and the extent to which they affect a claimant's ability to work must be evaluated. Craig, 76 F.3d at 595. When a claimant proves the existence of a medical condition that could cause symptoms/pain, "the claimant's subjective complaints [of symptoms/pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of symptoms/pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2002). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:

(I) Your daily activities;

(ii) The location, duration, frequency, and intensity of your pain or other symptoms.

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2002).

SSR 96-7p repeats the two-step regulatory provisions:

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996).[3] Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the pain/symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520© and 416.920©.

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain/symptoms alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record."). For example, the allegations of a person who has a condition capable of causing pain/symptoms may not

---

[3] 20 C.F.R. § 416.929(c)(4) states as follows respecting the standard for evaluating a claimant's credibility:

> In determining the extent to which your symptoms, such as pain, affect your capacity to perform basic work activities . . ., we consider all of the available evidence described in paragraphs (c)(1) through (c)(3) of this section [daily activities, etc.]. We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your medical history, the medical signs and laboratory findings, and statements by your treating or examining physician or psychologist or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish you capacity for basic work activities . . . to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.

be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain/symptoms. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

"RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a); 416.945(a) (2003). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

The RFC determination is an issue reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2)(2003).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted). The Regulations specifically

direct the ALJ to consider limitations related to both severe and non-severe impairments:

> When you have a severe impairment(s), but your symptoms, signs and laboratory findings do not meet or equal those of a listed impairment in Appendix 1 of this subpart, we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining you residual functional capacity.

20 C.F.R. § 404.1545(e).

Again, it is ultimately the responsibility of the ALJ, not the Court, to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the ALJ's conclusions are rational. Oppenheimer v. Finch, 495 F.2d 396,397 (4th Cir. 1994).

The record in this case contains no medical records dated prior to December 31, 1991, the date Mr. Demesa was last insured, indicating that Mr. Demesa was diagnosed as suffering from sleep apnea and treated for sleep apnea. Claimant's testimony (Tr. at 43 - 44, 46 - 53, 435 - 440.) and the statements of Drs. Neri (dated May 12, 2006), Merva (dated November 23, 2004), Garcia (dated December 29, 2005) and Rago (dated January 10, 2007)(Tr. at 330 - 333.) are the only evidence of it. It is evident that Dr. Neri treated Mr. Demesa for hypertension, Dr. Rago saw Mr. Demesa and "recommended that he . . . seek the advice of a pulmonologist" and Dr. Merva treated Mr. Demesa for sleep apnea and prescribed a CPAP machine prior to December 31, 1991. (Tr. at 43, 331, 333, 424 - 425.) Based upon the statements of the doctors, ALJ Swartz concluded that "[t]hrough the date last insured, [Mr. Demesa] had the following severe impairments: hypertensive coronary disease, obesity and obstructive sleep apnea." (Tr. at 375.) Having reached this conclusion and finding that Mr. Demesa's severe impairments did not meet or medically equal the requirements of the impairments listed in Appendix 1 of the regulations, the ALJ was required to determine what

functional limitations resulted from Mr. Demesa's severe impairments and what, if any, residual functional capacity Mr. Demesa had to perform substantial gainful employment. The ALJ determined that on December 31, 1991, Mr. Demesa "had the residual functional capacity to perform light work . . . except that he needed the opportunity to change positions and he had a mild limitation in his ability to concentrate." (Tr. at 378.) In reaching this conclusion, ALJ Swartz considered Claimant's testimony respecting Mr. Demesa's symptoms and Dr. Merva's treatment of Mr. Demesa for sleep apnea prior to December 31, 1991, the absence of objective evidence that Mr. Demesa "was seriously limited" prior to that date and evidence in the medical records that Mr. Demesa reported feeling good for several years after that date. In this latter regard, the ALJ refers to 1994 medical notes indicating that Mr. Demesa told his doctor that "he's been working late at night trying to do carpentry at home" (Tr. at 209.) and stating "[n]o complaints and he's feeling good".[4] Clearly, contrary to Claimant's assertions, the ALJ credited her testimony and the statements of Drs. Neri, Merva, Rago and Garcia in reaching his conclusion that Mr. Demesa's obstructive sleep apnea qualified as a severe impairment prior to December 31, 1991. The ALJ did not credit their testimony respecting Mr. Demesa's symptoms and the functional limitations which Mr. Demesa experienced as a consequence of his obstructive sleep apnea in view of countervailing evidence in the record indicating that Mr. Demesa's symptoms and limitations after December 31, 1991, were not as

[4] The undersigned notes that a 1994 Discharge Summary indicates that notwithstanding his medical problems, Mr. Demesa was "in stable condition, feeling well." (Tr. at 157.); a 1997 medical note states "[c]omplaining of dizziness. * * * Lately he has also not been sleeping although his physical examination is basically unremarkable and unchanged . . .."; a 1995 medical note indicates that Mr. Demesa complained of being tired, had a choking sensation and edema in his legs, had an EKG at Claimant's office, was found to have atrial fibrillation and was prescribed Lasix and "after that, he apparently got better." This latter note states 'bradycardia at 44. That's probably why he's complaining of getting tired and no energy."

debilitating as they represented. There being no medical records prior to or contemporaneous with Mr. Demesa's date last insured, ALJ Swartz properly considered and relied upon this later evidence, and the evidence plainly supports ALJ Swartz' determination in these respects as well. Accordingly, the undersigned concludes that ALJ Swartz' decision is fully in conformity with the required analytical framework and supported by substantial evidence of record and the Commissioner's final decision should be affirmed.

## PROPOSAL AND RECOMMENDATION

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright

v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: September 4, 2013.

R. Clarke VanDervort
United States Magistrate Judge